UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| BRET C. JARMAN, | ) | Civ.  03-5064-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CLOVIA BARNDT; JANE CHILDERS; | ) | ORDER GRANTING IN PART |
| KATHY ALEXANDER; PAUL | ) | AND DENYING IN PART |
| NABHOLZ; ALEX ASBRIDGE; and | ) | DEFENDANTS' MOTION FOR |
| LLOYD REICHARDT, individually; | ) | SUMMARY JUDGMENT |
| THE COMMON COUNCIL OF | ) | |
| EDGEMONT, SOUTH DAKOTA; and | ) | |
| THE CITY OF EDGEMONT, SOUTH | ) | |
| DAKOTA, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Bret C. Jarman, was the commanding officer of the City of
Edgemont police force until he was terminated by defendants.  Jarman alleges
that defendants fired him because he endorsed a candidate for Fall River
County State's Attorney and supported union organizing activities.  Jarman
contends that defendants violated his right to free speech and freedom of
assembly protected by the First Amendment to the United States Constitution
and his Fourteenth Amendment right to due process of law.  Jarman also
alleges state-law claims for breach of contract, wrongful discharge, and
intentional infliction of emotional distress.  Jarman is seeking compensatory
damages, punitive damages, costs, prejudgment interest, and attorney's fees.
Defendants move for summary judgment and assert qualified immunity.

Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The evidence viewed in the light most favorable to the nonmoving party, Jarman, is:

Edgemont is a second class municipality with an aldermanic form of government.  DSUMF ¶ 1.  The mayor is its chief executive officer.  Id.  In September of 1994, the City Council eliminated the position of Chief of Police and determined that its police department would consist of a Commanding Officer and patrolmen.  DSUMF ¶ 11-13.  The ordinance provided that the Commanding Officer would be in charge of the police force.  DSUMF ¶ 13.  The ordinance listed several causes for demotion, and provided that a Commanding Officer could only be demoted on the recommendation of the mayor and approval of the City Council.  Id.

The City of Edgemont hired Jarman as a police officer in November of 1991.  In 1994, the Edgemont City Council promoted Jarman to the rank of Commanding Officer.  DSUMF ¶ 3, 5.  Defendants Clovia Barndt, Jane Childers, Kathy Alexander, Paul Nabholz, Alex Asbridge, and Lloydt Reichardt were members of the Edgemont City Council when Jarman was terminated on October 4, 2000.   DSUMF ¶ 2.  Lloyd Reichardt was also acting mayor.  DSUMF ¶ 21.

2

Jarman alleges that there were never any complaints about his job performance until he was terminated in October 2000.  In 1999, he was involved in a high-speed chase in which he shot and killed the suspect, Albert Six Feathers, Jr.  Jarman contends that the South Dakota Department of Criminal Investigation found that the shooting was justified.  Six Feathers' estate filed a wrongful death lawsuit, which was unsuccessful.  Jarman contends that the city terminated him in part because of the costs of defending the wrongful death suit. Pl.'s Br. in Opp. to Summ. J. at 7-8, Jarman Dep. at 173.

 Jarman testified that he led a successful effort to secure union representation for city employees, which was ratified by a unanimous vote of city workers.  Jarman Dep. at 167-170.  Jarman testified that on September 3, 2000, Clovia Barndt told him that his unionization efforts "could be" one of the reasons the city was planning to terminate him.  Id. at 170.  Jarman also alleges that he participated in a wage grievance on behalf of patrolman Robert Almendinger a few weeks before the city fired Jarman.  Jarman Aff. ¶ 16-17.  Jarman alleges that Acting Mayor Reichardt was opposed to the union and its participation in grievances.  Jarman Dep. at 169.

Acting Mayor Reichardt's grandson, Lance Russell, was a candidate for Fall River County State's Attorney in the fall of 2000.  Jarman supported Russell's opponent, Pat Ginsbach, and wrote a letter on his behalf that Ginsbach used in a campaign advertisement.  See Pl.'s Ex. 7.  Jarman alleges

3

that his public support of Ginsbach was another reason he was fired.  Jarman

Dep. at 166-67.  Ginsbach testified that the timing of Jarman's termination

"look[ed] kind of funny" because some of the purported incidents of

insubordination took place two years before he was terminated, and Acting

Mayor Reichardt did not take any action until Jarman wrote the letter in

support of his grandson's opponent.  Ginsbach Dep. at 31-32.

Defendants allege that they terminated Jarman based on thirteen

incidents of unprofessional conduct.  Those incidents include, in part,

Jarman's refusal to include the mayor in Police Committee meetings, Jarman's

failure to attend City Council meetings; alleged incidents of insubordination in

June and August of 2000, alleged improper conversations with Janie Childers

of the Police Committee and Kathy Alexander; failure to respond to requests

that he stop patrolman Rob Almendinger from blocking the alley behind his

home with his patrol car; the improper confrontation of former council member

Mary Kellogg wherein Jarman accused her of going through his personnel file;

a citizen's concerns about Jarman's conduct of various investigations; alleged

removal of a document addressed to the City of Edgemont from the mayor's

mailbox and photocopying of the document before returning it to the box; the

loss or discarding of a police radio; and the attempt to have Edgemont Fire

Chief Jerry Dibble's wife removed from her position with the Hot Springs Police

Department.  DSUMF ¶ 16.  Jarman denies most of these allegations, but

admits that he told Childers he would have sued her if the council had not

4

approved the budget for the police department, admits that he confronted former city council member Mary Kellogg about viewing his personnel file, and admits that an Edgemont business owner wrote a letter to the City complaining about Jarman's deficiencies as a police officer.  Pl.'s Statement of Opp. to DSUMF ¶ 16(j), (k) and (m).

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the

underlying facts in the record.  <u>Vette Co. v. Aetna Cas. & Sur. Co.</u>, 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).

**DISCUSSION**

**1.     Appointed Municipal Officers**

Defendants argue they are entitled to summary judgment on Jarman's claims because they had the power to remove Jarman from his duties under South Dakota statute because he was an appointed officer. South Dakota law provides that:

> In an aldermanic-governed first and second class municipality the mayor shall have power except as otherwise provided to remove from office any officer appointed by him, whenever he shall be of the opinion that the interests of the municipality demand such removal, but he shall report the reasons for his removal to the council at its next regular meeting.

SDCL 9-14-13.  The South Dakota Supreme Court "has previously held that this statute gives the mayor full and absolute power to remove appointed officers whenever, in his opinion, the interests of the city require it."  <u>Finck v. City of Tea</u>, 443 N.W.2d 632, 634 (S.D. 1989) (quotations omitted).  <u>See also</u> <u>McElhaney v. City of Edgemont</u>, 655 N.W.2d 441, 445, 2002 SD 159 (S.D. 2002).

State law provides that "The governing board of municipalities shall appoint such officers as needed and provided by ordinance."  SDCL 9-14-1. Edgemont Amended Ordinance No. 63 provides:

> At the first regular meeting of the City Council held after the general election of such year there shall be <u>appointed</u> by the Mayor, by and with the consent of the City Council, a City Finance Officer, a City Attorney, a Street and Water Commissioner, and <u>such number of policemen as may be deemed necessary</u> by the Council, who shall hold their respective offices for one year, and until their successors are appointed and qualified, except as hereinafter provided.

Amended Ordinance No. 63, City of Edgemont, adopted 1994, Chapter 3, Section 1 (emphasis added).

Jarman argues that he was not appointed to his position, but rather he was promoted to sergeant and became commanding officer of the Edgemont Police Department.  To "appoint" an officer means "[t]o select or designate to fill an office or position."  <u>The American Heritage Dictionary of the English Language</u> (4th ed. 2000), <u>available at</u> www.dictionary.com.  The court sees no difference between being promoted upon motion of the mayor with the approval of the council and being "appointed by the mayor with the approval of the council" as described in SDCL 9-14-3.  Furthermore, Section 1 of Chapter 3 of Edgemont City Ordinance No. 63 reflects that policemen are "appointed" to their respective offices.

Jarman contends that pursuant to the Edgemont personnel policy manual and the Edgemont ordinance, Edgemont policemen can only be

terminated for cause.  Chapter 3, Section 22 of Amended Ordinance No. 63 eliminated the position of Chief of Police and stated that the "Edgemont Police Department will operate with a Commanding Officer and patrolmen."  Id. at Section 22.   The ordinance further provides that:  "The Commanding Officer shall hold the position of either Captain, Lieutenant or Sergeant.  The Mayor, by and with the consent of the City Council, shall determine when a police officer shall be promoted to the position of either Captain, Lieutenant or Sergeant.  The appointment to the position of Captain, Lieutenant or Sergeant shall be based in part upon seniority, evaluations of job performance, training and experience in law enforcement."  Id.  Under the ordinance, a police officer may be demoted by the Mayor with the approval of the City Counsel only for the listed reasons including job performance problems, violation of the law, conduct problems, or insubordination.  Id.

In addition, the City Council adopted a personnel policy manual for the police department around the same time it passed Amended Ordinance No. 63. Ginsbach Dep. at 3-4.  The personnel manual provides that the City "shall exercise its rights [to] discipline any employee only for good and just cause." Jarman Dep. Ex. 2 at 13.  The personnel manual further provides that:  "The decision to dismiss an employee is to be determined by the Mayor and Council. Dismissal proceedings will be taken when as [sic] employee's work, conduct, or character are considered unsatisfactory."  Id. at 8.

8

Jarman contends that the City passed the ordinance and adopted the personnel manual to give job security to police officers so they could not be fired by a new mayor.  Patrick Ginsbach, who was City Attorney in 1994, testified that the City passed the ordinance after it was sued for wrongful termination by its police chief in the early 1990s.  Ginsbach Dep. at 18-20. The Mayor "wanted to get away from . . . the general philosophy of the legislature saying you've got these appointed positions.  He wanted to eliminate those.  Those people that might have held the position of Chief of Police could be a Commanding Officer, but they would have the protection of the Personnel Manual."  Id. at 20.  Thus, Jarman contends that as Commanding Officer, under the ordinance and the personnel manual, he was not an appointed officer subject to termination at will.

The South Dakota Supreme Court, however, has rejected municipal attempts to limit their power to dismiss appointed officers at will.  In Patterson v. Linn, 636 N.W.2d 467, 468 (S.D. 2001), the court affirmed summary judgment for the city defendants, who had fired the Sturgis city finance officer in violation of city personnel policies.  "The power given by the constitution or statute to remove an officer from office without notice or hearing may be exercised notwithstanding that by ordinance, by law, or order of appointment, an attempt has been made to fix a definite term of office for the officer, or provide for notice and hearing in removal proceedings."  Id. at 469-70.  A city

9

council may not override the legislature's express grant of removal power.  Id. at 470.  In order to effectively run a local government, the mayor needs the power to remove appointed officers.  Id. at 469.

"City policies, like city ordinances, must stay within 'reasonably strict' adherence to their statutory ambit."  Id. (quoting City of Marion v. Schoenwald, 631 N.W.2d 213, 216, 2001 SD 95 (S.D. 2001)).  Despite the City of Edgemont's amended ordinance providing more job security to its lead police officer, it cannot "override the statute empowering the mayor to remove an officer."  Id. at 468.  Because the City of Edgemont cannot override the powers conferred upon it by the legislature, Jarman cannot rely on Amended Ordinance No. 63 and the Edgemont personnel manual to override defendants' authority to terminate him without cause.

Whether the job title is Chief of Police or Commanding Officer, it is undisputed that Jarman was the supervisor of the police department.  DSMF ¶ 7.  In Finck v. City of Tea, 443 N.W.2d 632, 635 (S.D. 1989), the court noted that the legislature "intended to give the mayor power to terminate the appointive officers, i.e., the department heads . . . ."  Accordingly, Jarman could be fired without following the procedures outlined in the Edgemont ordinance and personnel manual because he was in charge of the police department.

10

Jarman contends that because he was never formally appointed or bonded, he cannot be considered an appointed officer.  Appointed officers swear an oath of office, receive a certificate of appointment, and must post a bond.  SDCL 9-14-4, 9-14-6.  Nothing in the record indicates that Jarman took an oath of office, received a certificate of appointment, or posted a bond. Because the South Dakota Supreme Court has described department heads and appointive officers as synonymous for the purposes of SDCL 9-14-1 and 9-14-13, and Jarman undisputedly acted as the head of the police department, these deficiencies do not make Jarman an employee rather than an appointive officer.  See Finck, 443 N.W.2d at 635 (department heads are appointive officers, who as a matter of law, may be terminated at the mayor's discretion).

In other contexts, the South Dakota Supreme Court has recognized that a city employee may be an appointive officer without being sworn in.  For example, in Speckels v. Baldwin, 512 N.W.2d 171, 174 (S.D. 1994), the defendant was subject to the ethics regulations that applied to appointed officers, despite the fact that he had not been sworn in as city attorney during the relevant time period.  The defendant argued that he was just an employee doing the legal work of the city.  Id. at 175.  He still performed the job duties of a city attorney.  Id. at 174-75.  Because he acted as an appointed city officer under SDCL 9-14-1, he was subject to conflict of interest laws that only apply

11

to appointed or elected officials, despite his failure to be sworn in as city attorney.  Id.

Jarman also argues that because he did not have the power to hire and fire patrolmen, he was not an appointed officer.  Jarman did not cite any authority for the proposition that the power to hire and fire is necessary to qualify as an appointed officer, and the court is unaware of any such authority.

In this case, Jarman performed the duties of an appointed officer by working as the head of the Edgemont Police Department.  Jarman was an appointed officer and could be terminated if the mayor believed it was in the City's interests to do so, pursuant to SDCL 9-14-13.

## 2.     Wrongful Discharge—Breach of Contract

Jarman alleges that he was wrongfully discharged, thus breaching his employment contract.  South Dakota is an employment at will state.  Hollander v. Douglas County, 620 N.W.2d 181, 185, 2000 SD 159 (S.D. 2000).  "An employment having no specified term may be terminated at the will of either party on notice to the other . . . ."  Id. (quoting SDCL 60-4-4).  South Dakota recognizes a narrow exception to the employment at will law doctrine when an employer's discharge policy provides that termination will only occur for cause. Id.  An agreement to discharge for cause arises when (1) "an employee handbook 'explicitly provides, in the same or comparable language that discharge can occur for cause only,'" or (2) "'where the handbook contains a

12

detailed list of exclusive grounds for employee discipline or discharge and, a
mandatory and specific procedure which the employer agrees to follow prior to
any employee's termination.'" Hollander, 620 N.W.2d at 185 (quoting
Butterfield v. Citibank of S.D., 437 N.W.2d 857, 859 (S.D. 1989)).

In light of this court's finding that Jarman was an appointed officer, and
the South Dakota Supreme Court's rejection of municipal attempts to limit
their power to terminate appointed officers at will, Jarman cannot maintain a
wrongful discharge claim based on a breach of contract theory.  See Patterson,
636 N.W.2d at 469-70.  Accordingly, defendants are entitled to judgment as a
matter of law on this claim.

**3.      Wrongful Discharge—Violation of Public Policy**

Jarman argues that he was wrongfully discharged in violation of public
policy.  The harsh effects of the at will employment doctrine have been
tempered by South Dakota's adoption of the public policy exception.  Dahl v.
Combined Ins. Co., 621 N.W.2d 163, 166, 2001 SD 12 (S.D. 2001).  An
employee has a cause of action "where an employer's motivation for
termination contravenes a clear mandate of public policy."  Id.   The South
Dakota Supreme Court has recognized a cause of action for employees under
the public policy exception for (1) termination for failure to commit a crime,
(2) termination in retaliation for filing a worker's compensation claim, and
(3) termination in retaliation for whistleblowing that serves a public purpose.

13

Dahl, 621 N.W.2d at 166-67.  Jarman urges this court to recognize a fourth public policy exception to the at will employment doctrine for termination in retaliation for exercising his First Amendment rights to freedom of association and freedom of speech.

To state a cause of action under the public policy exception, "the employee must plead and prove that a substantial public policy may have been violated."  Dahl, 621 N.W.2d at 166-67 (citing Niesent v. Homestake Mining Co., 505 N.W.2d 781, 783 (S.D. 1993)).  The primary sources of public policy declarations in South Dakota are statutes, the state constitution, and caselaw. Sanford v. Sanford,  694 N.W.2d 283, 289, 2005 SD 34, 34 (S.D. 2005). Whether a termination violates a clear mandate of public policy is a question of law.  Niesent, 505 N.W.2d at 783.

Jarman alleges that defendants fired him for organizing a union and for endorsing Pat Ginsbach in the Fall River County State's Attorney campaign. Jarman contends defendants' decision to fire him violated the South Dakota Constitution, which provides that the "right of persons to work shall not be denied or abridged on account of membership or non-membership in a labor union, or labor organization."  S.D. Const. art. VI, § 2.  In Levasseur v. Wheeldon, 112 N.W.2d 894, 898 (S.D. 1962), the court noted that:

> [W]hen the people amended Section 2, Article VI, of the
> Constitution to provide that the 'rights of persons to work' shall
> not be denied because of 'membership or non-membership' in a

14

> labor union, we think that the language is plain and unambiguous
> and there is no occasion for interpretation.

Like language in a statute or contract, words in a constitution must be given their plain meaning unless the phrase is ambiguous.  Levasseur, 112 N.W.2d at 898.  The court held that the amendment applied to public employment and that municipalities could not prevent their employees from joining unions.  Id.

In addition to the protections found in the South Dakota Constitution, the First Amendment to the United States Constitution protects an employee's right to participate in union activities.  Roberts v. Van Buren Public Schools, 773 F.2d 949, 957 (8th Cir. 1985).  A state may not prevent public employees from taking an active part in union affairs, and may not retaliate against employees for union activity.  Id.  Thus, termination of a public employee for union activity violates the state and federal constitutions.

In Niesent, 505 N.W.2d at 783-84, the South Dakota Supreme Court found that the worker's compensation law would be undermined if employers were permitted to discharge employees for seeking compensation under the act.  As a result, the Supreme Court recognized a public policy exception for wrongful discharge in retaliation for filing a worker's compensation claim.  Id.  Here, an employee's right to engage in union activity would be undermined if employers could terminate employees in retaliation for organizing a union.  The court finds that a public policy exception to the at will employment doctrine exists for termination in retaliation for the exercise of an employee's right to

15

freedom of association by engaging in union organizing activities.  Because Jarman has alleged sufficient facts from which a reasonable jury could find that he was terminated in retaliation for organizing a union, as discussed in § 7 <u>infra</u>, the court finds that defendants are not entitled to summary judgment on this claim.

Jarman further alleges that he was terminated in retaliation for endorsing Pat Ginsbach for State's Attorney, who was running against Mayor Reichardt's grandson.  "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." <u>South Dakota v. Springer-Ertl</u>, 610 N.W.2d 768, 771, 2000 SD 56 (S.D. 2000) (citation omitted).  The South Dakota Constitution provides that "[e]very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."  S.D. Const. art. VI § 5 (quoted in <u>State v. Martin</u>, 674 N.W.2d 291, 297, 2003 SD 153 (S.D. 2003).  Because freedom of expression facilitates the free flowing exchange of ideas necessary for democracy, any government regulation on the content of speech is subject to strict scrutiny.  <u>Martin</u>, 674 N.W.2d at 297.

A majority of courts have held that state or federal constitutional free speech claims do not give rise to a public policy exception in private sector wrongful discharge claims because of the lack of state action   <u>See, e.g.</u>,

16

<u>Tiernan v. Charleston Area Medical Center, Inc.</u>, 506 S.E.2d 578, 589-90 (W. Va. 1998) (citing cases).  It is settled, however, that a state cannot condition public employment on a basis that infringes on the employee's constitutionally protected interest in free expression.  <u>Tiernan</u>, 506 S.E.2d at 588 (citing <u>Connick v. Myers</u>, 461 U.S. 138, 142, 143, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)).  In light of the fact that Jarman was a municipal employee, and because state and federal courts grant an extremely high level of protection to political speech, the court finds that a public policy exception to the at will employment doctrine exists for termination in retaliation for the expression of political speech.  Because Jarman has alleged sufficient facts from which a reasonable jury could find that he was terminated in retaliation for engaging in political speech, as discussed in § 6 <u>infra</u>, the court finds that defendants are not entitled to summary judgment on this claim.  Accordingly, defendants' motion for summary judgment is denied as to Jarman's wrongful discharge/public policy claim.

**4.    Intentional Infliction of Emotional Distress**

Jarman alleges intentional infliction of emotional distress (IIED) related to defendants' termination of his employment.  A defendant may be liable for IIED when the plaintiff proves: the defendant engaged in extreme and outrageous conduct; the defendant intended to cause the plaintiff severe emotional distress; the defendant's conduct in fact caused plaintiff's injuries;

and the plaintiff suffered an extreme disabling emotional response to
defendant's conduct.  See Citibank (S.D.), NA v. Hauff, 668 N.W.2d 528, 535,
2003 SD 99 (S.D. 2003);  Richardson v. East River Elec. Power Co-op., 531
N.W.2d 23, 27 (S.D. 1995).  The circumstances surrounding an employment
termination can give rise to an IIED claim.  See, e.g., Moysis v. DTG Datanet,
278 F.3d 819, 827 (8th Cir. 2002).

    Whether defendants' conduct was extreme and outrageous is initially a
question for the trial court.  Harris v. Jefferson Partners, L.P., 653 N.W.2d 496,
500, 2002 SD 132 (S.D. 2002). "Proof for this tort must exceed a rigorous
benchmark."  Harris, 653 N.W.2d at 500.  The conduct necessary to support
an IIED claim must be "so outrageous in character, and so extreme in degree,
as to go beyond all possible bounds of decency, and be regarded as atrocious,
and utterly intolerable in a civilized community."  Id. (quoting Restatement
(Second) of Torts § 46 cmt. d (1965)).  Liability for this tort "will not extend to
mere insults, indignities, threats, annoyances, petty oppression, or other
trivialities."  Id.  People must expect a certain amount of rough language and
occasional inconsiderate or unkind acts.  Citibank, 668 N.W.2d at 536.

    Jarman alleges that these actions of defendants were extreme and
outrageous conduct: Mayor Reichardt's accusation that Jarman's wife was a
lesbian, and defendants' claim that they terminated him for thirteen alleged
incidents of unprofessional conduct, including rifling through the mail of the

18

acting mayor, arguing with Reichardt, and failing to ensure that Patrolman Almendinger removed his car from an alley.  Jarman alleges that when he was fired, he was in an emotionally fragile state due to his divorce and the shooting death of Albert Six Feathers.  Jarman does not allege that defendants were aware of this or that it made defendants' actions extreme and outrageous under the circumstances.

Viewing the evidence in the light most favorable to Jarman, the conduct that he relies on to support his IIED claim does not rise to the level of extreme and outrageous behavior necessary to submit the claim to a jury.  The South Dakota Supreme Court has affirmed summary judgment in several cases where the plaintiff failed to satisfy the extreme and outrageous conduct element.  See Citibank, 668 N.W.2d at 536, n.7 (citing Nelson v. WEB Water Development Ass'n, 507 N.W.2d 691, 693 (S.D. 1993) and several other cases).  In Nelson for example, a public meeting was held in which a board member of a nonprofit corporation made a motion to terminate Nelson.  Nelson, 507 N.W.2d at 691. The board discussed his job performance and terminated him that day, despite the fact that he had more than a year remaining on his employment contract. Id.  Defendants allegedly published defamatory comments about Nelson.  Id. at 696.  The court affirmed summary judgment for the defendants on this issue, because the alleged facts were insufficiently extreme and outrageous to submit the claim to the jury.  Id. at 699.

19

Like the plaintiff in <u>Nelson</u>, defendants made insulting comments, discussed Jarman's job performance at a public meeting, and terminated him despite his belief that he was not an at will employee.  Thus, Jarman has not alleged sufficiently outrageous and extreme conduct to submit the issue to a jury.  When courts have reversed summary judgment because there were disputed issues of fact regarding extreme and outrageous conduct, the facts were far more outrageous than the facts at issue here.  <u>See</u> <u>Reeves v. Reiman,</u> 523 N.W.2d 78 (1994) (defendant walked a naked and intoxicated plaintiff down the hall in front of classmates and placed her next to a male known to have a sexually transmitted disease); <u>Kjerstad v. Ravellette Publications, Inc.</u>, 517 N.W.2d 419 (1994) (employer used peephole to spy on employees in restroom).  The court recognizes that a person who is terminated will be upset, but there is nothing in the conduct of defendants that rises to the level of extreme or outrageous conduct.  <u>See</u> <u>Richardson</u>, 531 N.W.2d 23.  Accordingly, defendants are entitled to summary judgment on this claim

**5.     Section 1983—Alleged Due Process Violation**

Jarman alleges that defendants' termination of his employment deprived him of a property right without due process of law.  In order to maintain a due process claim, Jarman must have a property right in continued employment with the City.  <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).  Property rights protected by the

20

Constitution are created and defined by state law or other rules.  Id.  Because an employee in an employment at will arrangement may be terminated at any time for any reason, employment at will creates no constitutionally protected property interests.  Hollander v. Douglas County, 620 N.W.2d 181, 185, 2000 SD 159 (S.D. 2000) (citing Haddle v. Garrison, 525 U.S. 121, 125-26, 119 S. Ct. 489, 152 L. Ed. 2d (1998)).  In light of this court's finding that Jarman was subject to dismissal whenever the mayor believed it was in the City's interest to do so, Jarman had no property interest in continued employment as the Commanding Officer of the Edgemont Police Department.  See SDCL 9-14-13. Cf. Lillehaug v. City of Sioux Falls, 788 F.2d 1349, 1351-52 (8th Cir. 1986) (affirming dismissal of due process claim arising out of salary reduction because plaintiff was an appointive officer subject to termination without cause under SDCL 9-14-12).  Accordingly, defendants are entitled to judgment as a matter of law on Jarman's due process claim.

**6.    Section 1983—Alleged Violation of Freedom of Speech**

Jarman contends that he was fired because he organized a union, supported a coworker in a grievance proceeding, and publicly supported Pat Ginsbach in his campaign for state's attorney.  Pat Ginsbach was running against Lance Russell, the grandson of Acting Mayor Lloyd Reichardt.  Jarman, therefore, contends that the City violated his First Amendment rights to freedom of association and freedom of speech by terminating his employment.

21

It is well settled that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Buzek v. County of Saunders, 972 F.2d 992, 995 (8th Cir. 1992) (quoting Connick, 461 U.S. at 142).  To determine whether the First Amendment shields a public employee from discharge as a result of his or her speech, the court applies the two-step inquiry known as the Connick-Pickering analysis.[1]  Allen v. City of Pocahontas, Ark., 340 F.3d 551, 556 (8th Cir. 2003). The court must determine whether the employee's speech can be "fairly characterized as a matter of public concern."  Id. (quoting Connick, 461 U.S. at 146).  If the speech addresses a matter of public concern, the court balances the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Id. (quoting Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)).  Both issues are matters of law for the court to decide.  Id.

Whether an employee's speech addresses a matter of public concern must be determined by the context in which the statement was made. Connick, 461 U.S. at 147-48.  In this case, Jarman's letter of endorsement

---

[1] Both parties acknowledge that the Elrod/Branti exception to the Pickering balancing test does not apply to this case.  See Dockets 72 and 73.

22

published in a campaign advertisement was speech on a matter of public

concern because it was political speech related to an upcoming election.

After determining that Jarman spoke on a matter of public concern, the

court must balance the interests of the City in efficiently providing public

services against Jarman's free speech interests.  Allen, 340 F.3d at 556.  Under

the Pickering test, the court balances the following factors:

> (1) the need for harmony in the office or work place; (2) whether
> the government's responsibilities require a close working
> relationship between the plaintiff and co-workers when the speech
> in question has caused or would cause the relationship to
> deteriorate; (3) the time, manner, and place of the speech; (4) the
> context in which the dispute arose; (5) the degree of public interest
> in the speech; and (6) whether the speech impeded the employee's
> ability to perform his or her duties.

Belk v. City of Eldon, 228 F.3d 872, 880-81 (8th Cir. 2000).

"In cases where the public employer cannot demonstrate that the

employee's speech disrupted the workplace, however, the court need not

proceed to a specific Pickering analysis absent exceptional circumstances."

Belk, 228 F.3d at 881.  To put the Pickering balancing test at issue, the public

employer must show sufficient evidence that the speech had an adverse impact

on the government workplace.  Id. (citing Sexton v. Martin, 210 F.3d 905, 911-

12 (8th Cir. 2000)).  "The more the employee's speech reflects matters of public

concern, the greater the employer's showing must be that the speech was

disruptive before the speech can be punished."  Id.  Where there is no evidence

of disruption, consideration of the Pickering test is unnecessary because there

are no government interests in efficiency to weigh against the First
Amendment.  Id.  "Mere allegations of disruption are insufficient to put the
Pickering balance at issue."  Id.

In this case, defendants contend that they had authority to discharge
Jarman in order to maintain harmonious working relationships with their law
enforcement officers.  Defendants do not allege, however, that Jarman's letter
disrupted the operations of City government or the Edgemont Police
Department in any way.  Thus, there are no government interests in efficiency
to weigh against Jarman's First Amendment right to free speech.  See Belk,
228 F.3d at 881.

Even where an employee has shown that his speech was protected
because it related to a matter of public concern, and the defendant introduced
no evidence that the speech impaired the functioning of the department,
"[t]here remains the issue of causation."  See Buzek, 972 F.2d at 995.  A public
employee must prove that his or her protected speech was a "substantial or
motivating factor" in the employer's decision to terminate employment.  Id.
(citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287,
97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)).  The employer may avoid liability if it
can show that it was going to terminate the plaintiff anyway.  Mt. Healthy, 429
U.S. at 287.  Whether an employee's protected speech was a "substantial or
motivating factor" in the employer's decision to terminate his or her

24

employment, and whether the plaintiff would have been fired anyway are typically questions of fact for the jury.  Buzek, 972 F.2d at 995.

Defendants argue that Jarman cannot establish any evidence that his support for Ginsbach was a substantial motivating factor in his termination. They allege that they terminated Jarman for the thirteen incidents listed in Mayor Reichardt's termination letter.  Jarman contends it can be inferred that his endorsement of Ginsbach was one reason he was fired, because Ginsbach's opponent was Mayor Reichardt's grandson, Jarman was fired after the letter was published, and several of the incidents that allegedly led to his discharge took place years before he was actually fired.  Jarman also testified that he believed that Mayor Reichardt fired him because of his support of Ginsbach. Viewing the evidence in the light most favorable to Jarman, a reasonable jury could conclude that a substantial or motivating factor in defendants' decision to terminate him was because he endorsed Ginsbach.  Accordingly, defendants are not entitled to summary judgment on Jarman's § 1983 free speech claim.

**7.    Section 1983—Alleged Violation of Right to Freedom of Association**

Jarman contends he was fired for organizing a union and supporting a city employee in a grievance proceeding.  A public employer may not constitutionally prohibit its employees from joining a union or encouraging others to do so.  Roberts v. Van Buren Public Schools, 773 F.2d 949, 957 (8th Cir. 1985).  To the degree that defendants' decision to terminate Jarman may

25

have been influenced by his union activities, his conduct is within the scope of First Amendment freedom of association.  See id.

The Pickering test does not apply to claims involving only the freedom of association.  Int'l Ass'n of Firefighters, Local No. 3808 v. City of Kansas City, 220 F.3d 969, 974 n.3 (8th Cir. 2000).  Like the right to free speech, however, the right to freedom of association may be overridden by the government's interest as an employer in efficiency.  Roberts, 773 F.2d at 957.  For example, free association is not protected where union activity interferes with the employee's job performance or if the employee harasses and disrupts coworkers.  Roberts, 773 F.2d at 957.  Assuming Jarman's union activities are protected, he would still have to raise a genuine issue of material fact as to whether his union activities were a substantial factor in his termination.  Id. at 958.

Jarman testified that a month before he was fired, Clovia Barndt told him that his unionization efforts could be one of the reasons the city was planning to terminate him.  Mayor Reichardt testified that during a city council meeting, he stated he did not like unions.  Jarman was also responsible for the creation of the union.  Viewing the evidence in the light most favorable to Jarman, a reasonable jury could conclude that defendants' decision to terminate him was motivated in part by his union activities.  Reichardt was the Acting Mayor and had served as the president of the City Council.  Based on

26

his admitted dislike of unions and his strong position in Edgemont municipal government, a jury could reasonably conclude that defendants fired Jarman in part due to his union activity.  Cf. Roberts, 773 F.2d at 958 (affirming judgment for teacher allegedly discharged for union activity, even where entire school board testified they would have recommended her discharge even if she had not participated in union activity).  A jury could believe Jarman's testimony that Clovia Barndt admitted that his union activities could be one reason he was going to be fired.  Accordingly, defendants' motion for summary judgment on Jarman's First Amendment freedom of association claim is denied.

**8.    Qualified Immunity**

The doctrine of qualified immunity "shields government officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  Burnham v. Ianni, 119 F.3d 668, 673 (8th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996)).  When a qualified immunity defense is raised during summary judgment, "the official's conduct must be viewed through the prism of Rule 56--that is, [the court] must take as true those facts asserted by plaintiff[s] that are properly supported in the record."  Id. (citations omitted).  Therefore, "if there is a genuine dispute concerning predicate facts material to

27

the qualified immunity issue, there can be no summary judgment.'" <u>Gregoire</u>
<u>v. Class</u>, 236 F.3d 413, 417 (8th Cir. 2000) (quoting <u>Lambert v. City of Dumas</u>,
187 F.3d 931, 935 (8th Cir. 1999)). "'Predicate facts' include only the relevant
circumstances and the acts of the parties themselves, and not the conclusions
of others about the reasonableness of those actions." <u>Pace v. City of Des</u>
<u>Moines</u>, 201 F.3d 1050, 1056 (8th Cir. 2000) (internal citation omitted)). After
predicate facts are established, "the reasonableness of the official's conduct
under the circumstances is a question of law." <u>Tlamka v. Serrell</u>, 244 F.3d
628, 632 (8th Cir. 2001). <u>See also</u> <u>Pace</u>, 201 F.3d at 1056 ("We restate for
emphasis that whether an officer 'acted reasonably under settled law in the
circumstances' . . . is a question of law, and not itself a predicate fact.")

It was clearly established, at least as of 1995, that a municipality may
not terminate employees for participating in union activity. <u>See</u> <u>Roberts</u>, 773
F.2d at 957. And it was clearly established, at least as of 1983, that a public
employer may not terminate employees for exercising their First Amendment
rights of freedom of speech. <u>See</u> <u>Connick</u>, 461 U.S. 138. If Jarman's exercise
of his First Amendment rights to freedom of speech and association were a
substantial factor in defendants' decision to terminate Jarman, defendants'
actions in terminating Jarman were not reasonable. Thus, defendants are not
entitled to qualified immunity. Accordingly, it is hereby

28

ORDERED that defendants' motion for summary judgment is granted in part and denied in part.

Dated January 12, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE